IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BILLY M. MORRIS, et al.,

        Plaintiffs,

v.                                   CIVIL ACTION NO.  2:23-cv-00316

MINGO LOGAN COAL LLC, et al,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Arch Resources, Inc.'s [1] ("Arch") Motion to Dismiss the plaintiffs' Amended Complaint. (ECF No. 8.) For the reasons discussed herein, the motion is **GRANTED**.

I.     BACKGROUND

This action arises out of an alleged work-related injury Plaintiff Billy M. Morris suffered while operating a roof bolting machine at the Mountaineer II Mine ("Mountaineer II Mine"). (ECF No. 1-1 at 2, ¶ 8.) According to the Amended Complaint, Mr. Morris was employed by Defendant Mingo Logan Coal LLC ("Mingo Logan") at Mountaineer II Mine on January 13, 2021. (*Id.* at 2, ¶ 7.) Mingo Logan is a subsidiary of Arch, the alleged controller of Mountaineer II Mine. (*Id.* at 5, ¶ 21.) Plaintiffs allege that on January 13, 2021, Mr. Morris was directed to

---

[1] Arch Resources, Inc. is formerly known as Arch Coal, Inc. (ECF No. 1-1 at 1, ¶ 3.)

1

operate a roof bolting machine at Mountaineer II Mine.  (*Id.* at 2, ¶ 7.)  The Amended Complaint asserts that while Mr. Morris was operating a roof bolting machine, a rib roll occurred, striking Mr. Morris, and causing him to be pinned against the roof bolting machine until other miners freed him.  (*Id.* at 2, ¶ 8.)

On January 6, 2023, Mr. Morris and his wife, Wanda Morris (collectively "Plaintiffs"), filed this suit in the Circuit Court of Logan County, West Virginia.  Plaintiffs thereafter filed an Amended Complaint on March 14, 2023.  (ECF No. 1 at 1, ¶ 1.)  Then, on April 7, 2023, the defendants removed this matter to this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (ECF No. 1.)

The Amended Complaint asserts three causes of action.  Count One is a claim for deliberate intent, asserted against Mingo Logan.  (ECF No. 1-1 at 3–5.)  Count Two is a claim for common law negligence asserted against Arch.  (*Id.* at 5–7.)  Then, Count Three is a claim for loss of consortium for Mrs. Morris and is asserted against Mingo Logan and Arch (collectively "Defendants").  (*Id.* at 7.)

Arch filed the pending motion to dismiss on April 14, 2023.  (ECF No. 8.)  Plaintiffs filed their response on April 28, 2023, (ECF No. 11), and Arch filed their reply on May 5, 2023.  (ECF No. 12.)  As such, this motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint.  Fed. R. Civ. P. 12(b)(6).  A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007).  A case should be dismissed if, viewing the well-

pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

### III. DISCUSSION

As stated above, the only causes of action Plaintiffs assert against Arch are for negligence and loss of consortium. (ECF No. 1-1 at 5–7.) Each Count is addressed in turn.

A. *Count II – Negligence*

To succeed on a negligence claim in West Virginia, a plaintiff must establish, by a preponderance of the evidence, that first, the defendant owed the plaintiff a duty; second, the defendant negligently breached that duty; and third, the defendant's breach proximately caused the plaintiff's injuries. *Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016) (quoting *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939)). The issue here is clear: whether Plaintiffs' Amended Complaint alleges sufficient facts to establish that

"Arch breached a duty to Mr. Morris to provide him with a reasonably safe work environment." (ECF No. 8, at 1, ¶ 1.) As the Supreme Court of Appeals of West Virginia has made clear, duty "'is not absolute; but is always relative to some circumstances of time, place, manner, or person.'" *Wheeling Park Comm'n*, 787 S.E.2d at 551 (quoting Syl. pt. 1, *Dicken v. Liverpool Salt & Coal Co.*, 23 S.E. 582 (W. Va. 1895)).

"The law presumes that two separately incorporated businesses are separate entities and that corporations are separate from their shareholders." *S. Elec. Supply Co. v. Raleigh Cty. Nat'l Bank*, 320 S.E.2d 515, 516 (W. Va. 1984). This principle has been extended to limited liability companies. *See Kubican v. The Tavern, LLC*, 752 S.E.2d 299 (W. Va. 2013). The mere existence of a parent-subsidiary relationship does not establish the parent company has a responsibility "for the working conditions of its subsidiary's employees." *Muniz v. Nat'l Can Corp.*, 737 F.2d 145, 148 (1st Cir. 1984) (citing *Love v. Flour Mills of America*, 647 F.2d 1058, 1063 (10th Cir. 1981)). Nevertheless, a parent company may be directly liable to its subsidiary's employees if the parent company "'be[comes] directly involved' as a participant in *particular actions* – either alone or in concert with the subsidiary – that raise cognizable tort claims."[2] *Sommerville v. Union Carbide Corp.*, No. 2:19-cv-00878, 2021 WL 3384967, at *1 (S.D. W. Va. Aug. 3, 2021) (emphasis added) (quoting *United States v. Bestfoods*, 524 U.S. 51, 72 (1998)). For

---

[2] According to Arch, "[i]t is not enough to trigger liability for the parent to merely assist the subsidiary in the performance of its duty to its employees; rather, the parent 'must intend to completely subsume or supplant the duty of the other party.'" (ECF No. 9 at 5) (quoting *Halsey v. Townsend Corp. of Ind.*, 20 F.4th 1222, 1229 (8th Cir. 2021)). This rule, which stems from § 324A of the Restatement (Second) of Torts, has not been adopted nor is it followed in West Virginia. *Compare, e.g.*, *Halsey*, 240 F.4th at 1229 (quoting *Plank v. Union Elec. Co.*, 899 S.W.2d 129, 131 (Mo. App. 1995)) ("Under Missouri law, . . . 'one must intend to completely subsume or supplant the duty of the other party in order to incur liability for nonperformance of the duty.'"), *with Caudill v. EAN Holdings LLC*, No. 21-0096, 2022 WL 1223938, at *17 n.10 (W. Va. Apr. 26, 2022) (Wooten, J., concurring in part) (citing *Triad Insulation, Inc. v. Nationwide Mut. Fire Ins. Co.*, No. 12-1110, 2013 WL 3184645 (W. Va. June 24, 2013)) (stating the Supreme Court of Appeals "recognized but did not adopt" Restatement (Second) of Torts § 324A).

instance, activities such as the parent company's "'monitoring of the subsidiary's performance . . . and articulation of general policies and procedures, should not give rise to direct liability.'" *Hooper v. 1543 Country Club Rd. Manor Operations, LLC*, No. 16-1226, 2018 WL 472952, at *3 (W. Va. Jan. 19, 2018) (quoting *Bestfoods*, 524 U.S., at 72). Rather, the inquiry, "as it applies to direct liability of a parent corporation, 'is whether, in degree and detail, actions directed to the facility by an agent of the parent alone are eccentric under accepted norms of parental oversight of a subsidiary's facility.'" *Id.*

As indicated above, when evaluating a complaint in the motion to dismiss stage, the first step is to separate the legal conclusions in the complaint from factual allegations. *Iqbal*, 556 U.S. at 678. In this case, Plaintiffs' mention of Arch in the Amended Complaint is both intermittent and superficial. Plaintiffs conclude Arch had a "duty to provide [Mr. Morris] with a reasonably safe working environment." (ECF No. 1-1 at 5, ¶ 22.) Yet, Plaintiffs cannot articulate where that duty stems from, nor do they provide any factual allegations that would be enough to "draw the reasonable inference that [Arch] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

First, Plaintiffs claim Arch is the "controller of the Mountaineer II Mine"; however, Plaintiffs fail to provide any facts as to *how* Arch controls Mountaineer II Mine or *what* aspects of the mine Arch controls. (ECF No. 1-1 at 5, ¶ 21.) *See Hooper*, 2018 WL 472952, at * 4 (holding that for the parent company to be found negligent, the plaintiff had to show the parent exercised "actual control over the operations of the [subsidiary]," including evidence that the parent was "directly involved in the day-to-day operations of the facility."); *Johnson v. Pinnacle Mining Co., LLC*, 5:17-cv-03536, 2018 WL 2207128, at *5 (S.D. W. Va. May 14, 2018) (holding a complaint that alleged the defendant "controlled, operated and managed the activities at [the Pinnacle plant]

5

including the . . . design, construction, maintenance, and care of the plant, the premises and the machinery therein . . . and the safety and training for the personnel" sufficed to state a claim).

Unlike in *Johnson*, Plaintiffs here do not assert Arch had control over the safety of Mountaineer II Mine. In fact, Plaintiffs do not assert that Arch had control over anything in particular at Mountaineer II Mine, but rather, just the mine, generally. (ECF No. 1-1 at 5, ¶ 21.) All Plaintiffs provide is their basis of knowledge for Arch being the controller. (ECF No. 1-1 at 5, ¶ 21) (stating the information is "reported to the U.S. Department of Labor, Mine Safety and Health Administration.) Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Since Arch being the "controller of the Mountaineer II Mine" is a legal conclusion not supported by any factual allegations, the conclusion is not entitled to the assumption of truth. (ECF No. 1-1 at 5, ¶ 21.); *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570). Without anything more, that conclusion alone is insufficient to state a claim. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Second, Plaintiffs argue that Arch owed a duty because Arch "was responsible for compliance of Mountaineer II Mine with all applicable provisions of the Federal Mine Safety and Health Act and other applicable state and federal statutes and regulations." (ECF No. 1-1 at 6, ¶ 23.) This is another legal conclusion unsupported by any factual allegations in the Amended Complaint. Thus, as with the previous conclusion, this "legal conclusion couched as a factual allegation" is not entitled to the assumption of truth. *Papasan*, 478 U.S. at 286 (citing *Briscoe v LaHue*, 663 F.2d 713, 727 (7th Cir. 1981)). Perhaps there is no support for this conclusion in the

Amended Complaint because it would be directly contradicted by factual allegations elsewhere in the Amended Complaint pertaining to Mingo Logan. (*See* ECF No. 1-1 at, 3–4, ¶ 15.) The applicable federal laws and regulations Plaintiffs cite in the Amended Complaint apply to "mine operators." (ECF No. 1-1 at 4, ¶17); 30 C.F.R. § 75.220(a)(1), (b)(1). Violating such regulations results in a citation, and these citations are only given to mine operators. 30 U.S.C. § 814(a). *See Dickenson-Russell Coal Co., LLC v. Sec'y of Lab.*, 747 F.3d 251 (4th Cir. 2014); *Speed Mining, Inc. v. Fed. Mine Safety and Health Review Comm'n*, 528 F.3d 310 (4th Cir. 2008). In their Amended Complaint, Plaintiffs assert Mingo Logan received violations from regulatory agencies for "unsafe working conditions," but make no mention of Arch receiving such violations. (ECF No. 1-1 at 3–4, ¶15.) If Arch is also a "mine operator" subject to the same federal laws and regulations mentioned above, then it raises the question why Plaintiffs do not assert that Arch also received a violation.[3] 30 C.F.R. § 75.220(a)(1), (b)(1). Such lack of information cuts against the Plaintiffs' assertion.

Separating those legal conclusions from the factual allegations in the Amended Complaint, there is not much left that directly mentions or pertains to Arch. Plaintiffs' last attempt to create a duty by which to hold Arch liable is by alleging that Arch's "employees and/or agents monitor

---

[3] The West Virginia laws and regulations do not apply to Arch. Rather, as mentioned, the applicable West Virginia laws and regulations apply to the "operator." W. Va. Code, § 22A-2-25; W. Va. Code St. R. § 36-1-7. As is relevant to West Virginia Code § 22A-2-25, "operator" means "any firm, corporation, partnership, or individual operating any coal mine, or part thereof, or engaged in the construction of any facility associated with a coal mine." § 22A-1-2(8). As the term is used in West Virginia Code of State Rules § 36-1-7, "operator" means "any firm, corporation, partnership or individual engaged in the construction of shafts and/or slopes and the associated facilities thereof." W. Va. Code St. R. § 36-1-3(3.1.9). There are no allegations in the Amended Complaint suggesting Arch is an "operator" of Mountaineer II Mine under either of these definitions. Therefore, the West Virginia laws and regulations do not apply to Arch. Further, the applicable federal laws and regulations apply to "mine operators." 30 C.F.R. § 75.220(a)(1), (b)(1). Under the federal statute, an "operator" means "any owner, lessee, or other person who operates, **controls**, or supervises a coal or other mine . . . ." 30 U.S.C. § 802(d) (emphasis added). As indicated above, in their Amended Complaint, Plaintiffs conclude that Arch is the "controller" of Mountaineer II Mine, but they fail to provide any factual allegations about the specific acts Arch performed that would give rise to them being a "controller." (ECF No. 1-1 at 5, ¶ 21.)

and inspect Defendant Mingo Logan Coal LLC and the Mountaineer II Mine." (ECF No. 1-1 at 6, ¶25.) This allegation admittedly presents a closer call between legal conclusion and factual allegation than the previous two mentions of Arch. However, there are ultimately no factual underpinnings to support that Arch had a duty to protect Mr. Morris from the injury that allegedly occurred. *See Mack v. RPC, Inc.*, 439 F.Supp.3d 897, 903 (E.D. Tex. 2020) (granting the parent company's motion to dismiss when the plaintiff's complaint contained "no factual allegations about specific acts that [the parent company] performed or had a right to perform with respect to any aspect of safety or security."). Plaintiffs point to nothing that would show Arch "'became directly involved' as a participant in *particular actions* – either alone or in concert with the subsidiary – that raise cognizable tort claims." *Sommerville*, 2021 WL 3384967, at *1 (emphasis added) (quoting *Bestfoods*, 524 U.S. at 72).

Further, Plaintiffs make no mention of whether Arch had any involvement in monitoring or inspecting the aspects of Mountaineer II Mine that allegedly contributed to Mr. Morris' injury. Rather, it is Mingo Logan, not Arch, that Plaintiffs purport to have been responsible for examining and inspecting where Mr. Morris worked and where his alleged injury occurred. (ECF No. 1-1 at 3, ¶ 14.) With nothing more to support this claim, the Court cannot "draw the reasonable inference that [Arch] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The general "monitor[ing]" and "inspect[ing]" Plaintiffs assert Arch did fails to rise to the level as being anything more than "involv[ing] the facility but . . . [being] consistent with the parent's investor status." *Hooper*, 2018 WL 472952, at *3. At most, this allegation shows no more than "mere concern with" or "minimal contact about safety matters," which is insufficient to establish a parent company owes its subsidiary's employees a duty to ensure a safe work environment. *Muniz*, 737 F.2d at 148.

Even if one were to find that Arch generally "monitor[ing]" and "inspect[ing]" Mountaineer II Mine is enough to create a duty in this case, and even if one were to find the first two assertions by Plaintiffs are factual allegations and not bare legal conclusions, Plaintiffs still failed to establish that Arch breached any duty they may have owed. (ECF No. 1-1 at 6, ¶25.) As mentioned above, a negligence claim in West Virginia contains three elements—the second requires the defendant "negligently breach[]" the duty of care owed to the plaintiff. *Wheeling Park Commission*, 787 S.E.2d at 551. With respect to this second element, Plaintiffs only claim that Arch "breached its duty of care owed to Plaintiff Billy Morris by engaging in a conscious, reckless and outrageous indifference to the health, safety and welfare of Plaintiff Billy Morris and the other miners at the Mountaineer II Mine." (ECF No. 1-1 at 6, ¶ 26.). However, this unsupported legal conclusion is nothing more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. As such, this conclusion is also not "entitled to the assumption of truth" and is "insufficient to state a claim." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

Plaintiffs' Amended Complaint as it pertains to Arch contains largely nothing more than *ipse dixit* legal conclusions Plaintiffs are attempting to mask as factual allegations. The Court is not persuaded that this suffices to state a cognizable claim.[4]

In addressing Plaintiffs' claim that Arch's motion is premature because no discovery has taken place, such an argument at the present juncture is irrelevant. A Rule 12(b)(6) motion tests the legal sufficiency of Plaintiffs' Amended Complaint. "[W]hen a plaintiff files a complaint that

---

[4] This Court is not bound by opinions of other federal district courts, and after analyzing the facts presented in this case, the Court respectfully reaches a different conclusion from *Vance v. Mingo Logan Coal, LLC*. No. 2:22-cv-00593, 2023 WL 4378139 (S.D. W. Va. July 6, 2023); *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 553, n.1 (4th Cir. 2017).

fails to state a claim as a matter of law, he cannot complain that he is entitled to discovery to state his claim. In the absence of a cognizable claim, Plaintiff has no right to any discovery." *McCants v. Tolliver*, No. 1:11 CV 0664, 2011 WL 2893058, at *6 (N.D. Ohio July 15, 2011). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. As has been established in this case, Plaintiffs' Amended Complaint as it pertains to Arch consists of largely nothing more than legal conclusions. Therefore, Plaintiffs are not entitled to discovery to find any factual allegations to support the legal conclusions that have been put forward.

What is also irrelevant in this case is Arch's decision not to file a Motion to Dismiss in a similar case. A motion to dismiss under Rule 12(b)(6) tests only "the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 211 (4th Cir. 2019). It does not test the defendant's actions, or lack thereof, in a similar but different and unrelated case. No such burden shifting is found anywhere in the rule.

Plaintiffs do not allege facts against Arch sufficient to state a claim for negligence. Accordingly, the Court **GRANTS** the motion to dismiss (ECF No. 8) with respect to Plaintiffs' negligence claim against Arch and that claim is **DISMISSED**.

B. Count III – Loss of Consortium Asserted Against Arch

Since loss of consortium is a derivative claim that cannot survive against Arch without the negligence claim, Count Three is **DISMISSED** against Arch but remains pending against Mingo Logan. *See Marlin v. Bill Rich Constr., Inc.*, 198 W. Va. 635, 656 (1996); *Robbins v. Boston Sci. Corp.*, No. 2:12-cv-01413, 2015 WL 5842753, at *5 (S.D. W. Va. Oct. 6, 2015).

## IV. CONCLUSION

For these reasons, the Court **GRANTS** Arch's Motion to Dismiss, (ECF No. 8), and **ORDERS** that this civil action be, and the same is hereby, **DISMISSED WITH PREJUDICE** as to Arch.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: November 29, 2023

THOMAS E. JOHNSTON, CHIEF JUDGE