IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BILLY M. MORRIS, et al.,

              Plaintiffs,

v.                                                  CIVIL ACTION NO. 2:23-cv-00316

MINGO LOGAN COAL LLC, et al,

              Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiffs Billy and Wanda Morris' (collectively, "Plaintiffs") Motion to Strike and Designate Facts as Established, (ECF No. 89), Plaintiffs' Motion for Summary Judgment, (ECF No. 84), and Defendant Mingo Logan Coal LLC's ("Defendant") Motion for Summary Judgment, (ECF No. 82). For the reasons discussed herein, Plaintiffs' Motion to Strike and Designate Facts as Established, (ECF No. 89), is **GRANTED IN PART** and **DENIED IN PART**, Plaintiffs' Motion for Summary Judgment, (ECF No. 84), is **DENIED**, and Defendant's Motion for Summary Judgment, (ECF No. 82), is **DENIED**.

I.      BACKGROUND

This action arises out of an alleged work-related injury Plaintiff Billy Morris suffered while operating a roof bolting machine at the Mountaineer II Mine ("Mountaineer II Mine"). (ECF No. 1-1 at 2, ¶ 8.) According to the Amended Complaint, Mr. Morris was employed by Defendant at Mountaineer II Mine on January 13, 2021. (*Id.* at 2, ¶ 7.) Mingo Logan is a subsidiary of Arch Resources, Inc. ("Arch"), (*Id.* at 5, ¶ 21), and the operator of Mountaineer II Mine. (ECF No. 85

1

at 1.) On January 13, 2021, Mr. Morris was working as a roof bolter and was installing roof bolts in a section of the Mountaineer II Mine. (ECF No. 83 at 1.) While Mr. Morris was operating a roof bolting machine, a rib roll occurred, striking Mr. Morris, and causing him to be pinned against the roof bolting machine until other miners freed him. (*Id.* at 2.) As Defendant acknowledges, Plaintiff's "theory of liability hinges on his argument that the mine also should have been installing rib bolts in the section" where the rib roll occurred. (*Id.* at 1–2); (*see generally* ECF No. 85.)

On January 6, 2023, Plaintiffs filed this suit in the Circuit Court of Logan County, West Virginia. Plaintiffs thereafter filed an Amended Complaint on March 14, 2023. (ECF No. 1 at 1, ¶ 1.) Then, on April 7, 2023, the defendants removed this matter to this Court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1.) The remaining counts on the Amended Complaint are Counts One and Three.[1] Count One of the Amended Complaint is for Deliberate Intent against Defendant and Count Three is for Loss of Consortium on behalf of Mrs. Morris against Defendant. (ECF No. 1-1.)

Discovery in this case closed on December 29, 2023, (ECF No. 14.). Prior to that, on July 3, 2023, Plaintiffs served Requests for Production of Documents on Defendant, which included a Request for the following:

> all U.S. Department of Labor Mine Safety & Health Administration . . . citations . . . notifications of penalties and orders issued to Defendant ML Coal related to the Mountaineer II Mine for the five (5) years prior to the subject Incident to the present related specifically to roof control violations, roof falls, and rib falls/collapses.

(ECF No. 89-1 at 5, No. 10.) Defendant objected only on the basis that the Request was too broad in that it sought information related to "roof falls or roof control violations that do not involve rib support." *Id.* Defendant then produced copies of hundreds of Notices of Violation from the West

---

[1] Count Two was for Negligence against Arch. (ECF No. 1-1.) On November 29, 2023, this Court entered a Memorandum Opinion and Order granting Arch's Motion to Dismiss the Amended Complaint against it. (ECF No. 52.)

2

Virginia Office of Miner Health, Safety, and Training ("OMHST") and the U.S. Mine Safety and Health Administration ("MSHA"), and Defendant later served supplemental responses of these citations. (ECF No. 90 at 2.)

The parties deposed numerous witnesses, and then, each filed a motion for summary judgment. (ECF Nos. 82, 84.) In Defendant's Memorandum of Law in Support of Summary Judgment, Defendant repeatedly claims that "middle rock" is the kind of rock that injured Mr. Morris, and "middle rock" did not require rib bolts under the Roof Control Plan in effect at the time of Mr. Morris' injury. (*See generally* ECF No. 83.) To further support this theory, Defendant claims that "***the non-bolting of middle rock never led to a citation by MSHA or OMHST***." (*Id.* at 7 (emphasis in original).)

That ended up being partially false. Indeed, on February 29, 2024—nearly two months after the close of discovery and two weeks after Plaintiffs filed their Motion for Summary Judgment—Defendant's counsel produced a previously undisclosed MSHA citation dated February 25, 2019 ("2019 Citation"). (ECF No. 89-2.) The citation was issued to Defendant for not following the approved Roof Control Plan by *failing to bolt middle rock* in a particular way. (*Id.* at 4.)[2]

Defendant filed the pending motion for summary judgment on February 15, 2024. (ECF No. 82.) Plaintiffs filed their response on March 7, 2024, (ECF No. 94), and Defendant filed their reply on March 21, 2024, (ECF No. 103). Thus, this motion is fully briefed and ripe for adjudication.

---

[2] The 2019 Citation was for failing to use a stagger bolt pattern when "THE MIDDLE ROCK IN THE COAL RIBS IS 5 FT AND ABOVE," which, according to the 2019 Citation, was required by the approved Roof Control Plan. (ECF No. 89-2 at 4 (emphasis in original).) Failing to follow a particular bolt pattern when middle rock in the coal ribs is five feet and above is evidence that middle rock in those instances must be bolted in the first place.

Plaintiffs filed the pending motion for summary judgment on February 15, 2024. (ECF No. 84.) Then, Defendant filed their response on March 7, 2024, (ECF No. 95), and Plaintiffs filed their reply on March 21, 2024, (ECF No. 104). Thus, this motion is fully briefed and ripe for adjudication.

Lastly, Plaintiffs filed the pending motion to strike and designate facts as established on March 6, 2024. (ECF No. 89.) Defendant filed their response on March 20, 2024, (ECF No. 99), and Plaintiffs filed their reply on March 27, 2024, (ECF No. 108). As such, this motion is fully briefed and ripe for adjudication.

## II. DISCUSSION

The Court begins its discussion with Plaintiffs' Motion to Strike and Designate Facts as Established. (ECF No. 89).

A. Motion to Strike

1. *Timeliness of Supplemental Disclosure*

The Court first considers whether Defendant served the 2019 Citation in a timely manner, as required under Federal Rule of Civil Procedure 26(e)(1). For the reasons that follow, the Court finds that the supplemental disclosure of the 2019 Citation was untimely.

"Modern instruments of discovery . . . make a trial less a game of blind man's [bluff] and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (citations omitted). Federal Rule of Civil Procedure 26 governs parties' discovery obligations and "promotes fairness in the discovery process and at trial." *Thibeault v. Square D Co.*, 960 F.2d 239, 244 (1st Cir. 1992). "For Rule 26 to play its proper part in this salutary scheme, discovery must not be allowed to degenerate into a game of cat and mouse." *Id.* "Further, the discovery rules place an obligation

on the certifying attorney to make a reasonable inquiry into the factual basis for any discovery response, request, or objection." *Ball-Rice v. Bd. of Educ. of Prince George's Cty.*, Civil Action No. PJM–11–1398, 2013 WL 2299725, at *5 (D. Md. May 24, 2013) (citing Fed. R. Civ. P. 26(g)(1)).

Rule 26 provides the following statement regarding a party's duty to supplement their responses to discovery requests:

> A party . . . who has responded to an interrogatory, request for production, or request for admission . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1). "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment. "The obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect." *Id.* "[I]nformation 'is incomplete or incorrect' in 'some material respect' if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation." *Sender v. Mann*, 225 F.R.D. 645, 654 (D. Colo. 2004) (citations omitted). "There is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process . . . ." Fed. R. Civ. P. 26(e) advisory committee's note to 1993 amendment.

In this case, the relevant scheduling order provides a deadline for discovery of December 29, 2023. (ECF No. 14.) The scheduling order does not otherwise indicate a deadline for

supplementation of previous discovery disclosures. (*See id.*)

On July 3, 2023, Plaintiffs served Requests for Production of Documents on Defendant. (ECF Nos. 20; 89-1 at 5, No. 10.) Defendant responded to the request on September 2, 2023. (ECF No. 30.) The 2019 Citation falls within the requested documents that should have been produced but was not. (ECF No. 89-1 at 5, No. 10.) Prior to producing the 2019 Citation, Defendant supplemented their response on December 15, 2023, (ECF No. 57), again on January 2, 2024, (ECF No. 66), and again on February 2, 2024, (ECF No. 80.) The 2019 Citation was not produced with any of those supplemental disclosures. Instead, the 2019 Citation was produced on February 29, 2024—after the close of discovery and after Plaintiffs and Defendant filed their motions for summary judgment. (ECF Nos. 82, 84, 89-2.)

Undoubtedly, Defendant provided the 2019 Citation in a manner that was not timely. *See, e.g.*, *United States v. Whiterock*, No. 5:09–HC–2163–FL, 2012 WL 1825702, at *2 (E.D.N.C. May 18, 2012) (noting that "[s]upplementation to identify a witness for the first time after the close of discovery is manifestly not timely"); *cf. Branch v. Grannis*, No. 1:08–cv–01655–AWI–GSA–PC, 2014 WL 5819212, at *4 (E.D. Cal. Nov. 7, 2014) (finding that the defendant's supplemental document production was untimely where the defendant served the documents "long after discovery had closed" and "only two weeks before [the defendants] filed their motion for summary judgment"); *United States v. Cochran*, No. 4:12–CV–220–FL, 2014 WL 347426, at *6 (E.D.N.C. Jan. 30, 2014) (finding that plaintiff's disclosure of individuals with discoverable information was not timely where "plaintiff undoubtedly encountered difficulty in locating" these individuals, but never requested an extension of discovery and waited until after the close of discovery and "shortly before the dispositive motions deadline to identify these men"). *But see Qdoba Rest. Corp. v. Taylors, LLC*, Civil Action No. 08–cv–01179–MSK–KMT, 2009 WL 1938819, at *1 (D. Colo.

July 2, 2009) ("The Rules do not prohibit supplementation simply because the discovery deadline has passed . . . .").

    2. *Sanctions*

The Court next considers whether a sanction is appropriate for Defendant's untimely service of the 2019 Citation. Plaintiffs argue that an appropriate sanction is designating certain facts to be taken as established for purposes of Plaintiffs' Motion for Summary Judgment, or alternatively, for trial pursuant to Federal Rule of Civil Procedure 37(c)(1). (ECF No. 90 at 9–11.) The Court agrees. As an alternative to that sanction, Plaintiffs argue this Court should strike Defendant's Memorandum in Support of its Motion for Summary Judgment in its entirety or strike certain arguments contained in such, and/or prevent Defendant from advancing certain arguments at trial. (ECF No. 90 at 8–9.) The Court finds that striking Defendant's Memorandum in Support of its Motion for Summary Judgment is unwarranted and unnecessary for the reasons discussed below.

Federal Rule of Civil Procedure 37 provides remedies for a party's failure to provide the required supplements to discovery responses and states the following, in pertinent part:

> If a party fails to provide information . . . as required by Rule 26 . . . (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) . . . generally requires exclusion of evidence that a party

seeks to offer but has failed to disclose." *S. States Rock & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). "The Rule 37(c) advisory committee notes emphasize that the 'automatic sanction' of exclusion 'provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence.'" *Id.* at 592 n.2 (quoting Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment). "The alternative sanctions referenced in the rule are primarily intended to apply when a party fails to disclose evidence helpful to an *opposing* party." *Id.* (emphasis in original) (citation omitted). "This is because '[p]reclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party.'" *Id.* (quoting Fed. R. Civ. P. 37(c) advisory committee's note to 1993 amendment). The other appropriate sanctions in Rule 37 include: "directing that the matters embraced in the order or other designated facts be taken as established"; "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"; or "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(i)–(iii).

"Rule 37(c)(1) could prevent a non-moving party in a summary judgment proceeding from offering evidence to support its claims when that party has previously failed to meet its disclosure and duty to supplement requirements." *Contech Stormwater Sols., Inc. v. Baysaver Techs.*, 534 F. Supp. 2d 616, 622 (D. Md. 2008). The Court may exclude this evidence even if the non-disclosing party did not act in bad faith, as "Rule 37(c)(1) does not require a finding of bad faith or callous disregard of the discovery rules." *S. States Rock & Fixture*, 318 F.3d at 596. *See generally id.* ("[R]equiring proof that the nondisclosing party acted in bad faith would improperly shift the burden of proof away from the party on the exclusion issue." (citation omitted)). "Excluding evidence as a sanction for non-disclosure, even in the absence of bad faith, supports what the

8

Fourth Circuit has identified as the 'basic purpose' of Rule 37(c)(1), which is to prevent surprise and prejudice to the opposing party." *Contech Stormwater Sols., Inc.*, 534 F. Supp. 2d at 622 (quoting *S. States Rock & Fixture*, 318 F.3d at 596).

Nonetheless, "[t]he language of Rule 37(c)(1) provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to properly disclose: (1) when the failure to disclose is 'substantial[ly] justify[ed],' and (2) when the nondisclosure is 'harmless.'" *S. States Rock & Fixture*, 318 F.3d at 596 (second and third alterations in original) (quoting Fed. R. Civ. P. 37(c)(1)). The Fourth Circuit provided the following analysis for a district court to determine whether a nondisclosure was substantially justified or harmless:

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 597. "Four of these factors . . . relate mainly to the harmlessness exception, while the remaining factor—explanation for the nondisclosure—relates primarily to the substantial justification exception." *Id.* The non-disclosing party "bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

While the Fourth Circuit provided that district courts should consider these five factors, it also stated that a "district court [is] not *required* to tick through each of the *Southern States* factors." *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (emphasis in original) (stating that a "district court's failure to cite *Southern States* and specifically address each of the five factors listed therein does not amount to an abuse of discretion."). Accordingly, district courts are "not

9

required . . . to expressly consider each factor when evaluating discovery violations." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011). Nonetheless, the Court shall address each of the *Southern States* factors, in turn. For the reasons that follow, the Court finds that the five *Southern States* factors demonstrate that Defendant's untimely service of the 2019 Citation was neither harmless nor substantially justified.

First, the appropriate inquiry under the surprise factor is to address the surprise to Plaintiffs. The record indicates that Plaintiffs were surprised by the supplemental disclosure of the 2019 Citation. This is especially true considering that most, if not all, of Defendant's arguments in their motion for summary judgment are premised on the assertion that, according to the Roof Control Plan in effect at the time of Mr. Morris' injury, middle rock did not have to be bolted. (*See generally* ECF No. 83.) This assertion runs contrary to the 2019 Citation. (ECF No. 89-2 at 4.)

Defendant asserts multiple times in its response that the 2019 Citation is a publicly available document, and that Plaintiffs' attorneys should have been provided the 2019 Citation by MSHA as part of a FOIA request in this case, and it was provided in *Vance v. Mingo Logan LLC*, No. 2:22-cv-00593, 2023 WL 4378139 (S.D. W. Va. July 6, 2023), a different case being handled by counsel for plaintiffs. (ECF No. 99 at 4.) However, these assertions are irrelevant. *See Richardson v. Ford Motor Co.*, No. 3:13-cv-06529, 2014 WL 6471499, at *6–7 (S.D. W. Va. Nov. 18, 2014) (citing *Jackson v. West Virginia Univ. Hosps., Inc.*, No. 1:10-cv-107, 2011 WL 1831591, at *2 (N.D. W. Va. May 12, 2011) (citing cases) (holding that "'courts have unambiguously stated that [an objection based upon the availability of the documents to the requesting party] is insufficient to resist a discovery request.'")). Even when the same documents requested may be publicly available or otherwise accessible by the requesting party, there are certain benefits that

10

come from requiring documents to be produced through a formal discovery process. *Id.*[3]

Second, Plaintiffs have little to no chance to cure the surprise. Discovery in this case closed on December 29, 2023, (*see* ECF No. 14 at 1–2, ¶ 2 (constituting the relevant scheduling order, in which the Court orders that "all discovery . . . shall be completed" by December 29, 2023)), and Plaintiffs have already conducted the depositions of all relevant witnesses, except, at the time, the Rule 30(b)(6) deposition of Defendant's representative, (*see, e.g.*, ECF No. 89 at 3 (noting that parties have conducted at lease nine "depositions wherein the contents of the Roof Control Plan were a central inquiry – none of which were conducted with the benefit of the [2019 Citation].")). Absent a Court order permitting additional discovery, Plaintiffs have no available discovery options to explore all material facts relating to the 2019 Citation.

Even if discovery reopened, the cost of re-deposing all relevant witnesses regarding the 2019 Citation, would prejudice Plaintiffs by requiring them to exert more time, money, and resources. In short, "[i]t is hard to accept that these events would not serve as a surprise to [Plaintiffs], or that [Plaintiffs] could easily cure such a surprise." *Wilkins*, 751 F.3d at 223 (finding that the district court did not err in excluding discovery disclosures that were made "after discovery was closed" and "after [the non-disclosing party] filed a motion for summary judgment"); *see also Hoyle*, 650 F.3d at 330 (finding no abuse of discretion where district court excluded expert declaration when the disclosing party notified his opponent of the declaration "not only after the close of discovery but after [the opponent] had filed its motion for summary judgment"); *Gomez v. Haystax Tech., Inc.*, 761 Fed.Appx. 220, 231 (4th Cir. 2019) (finding harm to a party when, among other things, that party did not receive a disclosure until the last days of discovery, when they did not have a reasonable opportunity to depose witnesses); *Firehouse Rest. Grp., Inc. v.*

---

[3] For example, it may be useful to have a producing party on the record addressing whether a particular document is responsive to a specific request.

11

*Scurmont LLC*, C/A No. 4:09–cv–00618–RBH, 2011 WL 3555704, at *3 (D.S.C. Aug. 11, 2011) (finding that the surprise and ability to cure factors favored excluding the document disclosures where "counsel for [the plaintiff] represented that he has already deposed [the witness] and did not have these printouts available for the deposition" and "there is no opportunity at this late date to re-depose him."). Accordingly, the Court finds that Plaintiffs have no opportunity to cure the surprise caused by Defendant's untimely disclosure of the 2019 Citation. This inability to cure weighs in Plaintiffs' favor.

Third, Defendant's supplemental disclosure of the 2019 Citation would impact the Court's schedule and the trial deadlines if certain facts are not designated as established in these proceedings. The trial in this matter has been scheduled for May 14, 2024. (ECF No. 14 at 4, ¶ 11.) If the Court does not designate facts as established, it would likely have to permit additional discovery and summary judgment briefing on whether Defendant was required to bolt middle rock at the time of Mr. Morris' injury. These additional steps would then force the Court to postpone the trial in this case more than it already has had to do because of this untimely disclosure.

Defendant asserts that Plaintiffs "have time address the 2019 Citation at the Rule 30(b)(6) deposition of Mingo Logan, in their [response to Defendant's motion for summary judgment and their reply brief in support of their own summary judgment motion], in their supplemental expert report, in pretrial filings, and at trial itself." (ECF No. 99 at 6–7.) However, this does not cure the problem. "The purpose of Rule 26(a) [and similarly, Rule 26(e)] is to allow the parties to adequately prepare their cases for trial and to avoid unfair surprise." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 896 (4th Cir. 2014). *See also S. States Rock & Fixture*, 318 F.3d at 598 ("[T]he ability to simply cross-examine an expert concerning a new opinion at trial is not the ability to cure, . . . [because] the rules of expert disclosure are designed to allow an opponent to examine

12

an expert opinion for flaws and to develop counter-testimony through that party's own experts.") Similarly, in this case, Defendant's untimely supplemental disclosure of the 2019 Citation has significantly impaired Plaintiffs' ability to fully develop their claim for trial. Further, Plaintiffs have already filed their memorandum of law in support of their motion for summary judgment, thereby already laying out all their arguments. (ECF No. 85.) This memorandum was filed without having the opportunity to question any witnesses about the 2019 Citation.

Plaintiffs' inability to cure is made even more difficult by the fact that there is not a substantial amount of time before trial for Plaintiffs to re-depose critical witnesses. *See Edwards v. McElliots Trucking, LLC*, 268 F.Supp.3d 867, 884 (S.D. W. Va. 2017) (finding that any surprise caused to the opposing party could be cured by an agreement to reopen discovery to depose a witness and because of the stage of the case, it would not affect trial); *Fluor Fed. Sols., LLC v. BAE Sys. Ordnance Sys., Inc.*, No. 7:19-cv-698, 2023 WL 1795352 (W.D.Va. Feb. 7, 2023) (finding the surprise to the opposing party was cured when the non-disclosing party immediately notified the opposing party of the error, the opposing party received the documents within the deadline set by the court, and the opposing party was able to re-depose necessary witnesses without disrupting any motions deadlines or trial date).

Fourth, regarding the importance of the evidence, the evidence, "'must be viewed from the perspective of both parties.'" *Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021) (quoting *S. States Rock & Fixture, Inc.*, 318 F.3d at 598). "To that end, the more important the evidence, the more important it is for the proponent to disclose [the evidence] in a timely manner because it is more likely to prejudice the opposing party." *Benjamin*, 986 F.3d at 343. In this case, whether or not middle rock needed to be bolted is an issue that this case turns on, as evidenced by Defendant's own motion for summary judgment. (*See* ECF No. 83 at 1–2); (*see generally* ECF Nos. 83, 85.)

It is uncontested that Mr. Morris was injured at Mountaineer II Mine by a rib roll occurring. What is contested is whether the rock that caused Mr. Morris' injury—middle rock—had to be bolted at the time of his injury. Defendant has consistently argued that it did not. (ECF No. 83 at 5 (asserting "rib bolting of middle rock (with coal above it) was *not* required.") (emphasis in original)); (*Id.* at 8 (stating "because the rock that injured Plaintiff was a middle rock . . . there was no obligation under the Roof Control Plan to bolt it.").) Most ironically, Defendant asserts that "***[i]f MSHA or OMHST determined that middle rock created an inherent risk at the [Mountaineer II Mine], it would have required that such rocks be rib bolted prior to Plaintiff's accident***." (*Id.* at 14 (emphasis in original).) But—as the 2019 Citation allegedly shows—MSHA *did* require that such rock be bolted, and be bolted in a particular fashion. However, due to Defendant's untimely disclosure of the 2019 Citation, without any recourse from the Court, Plaintiffs will be unable to fully explore and prove such. Admittedly, the 2019 Citation is not a case dispositive silver bullet, but it is, unquestionably, a highly probative smoking gun. Therefore, since the 2019 Citation is an important piece of evidence, this factor weighs in Plaintiffs favor.

Turning to the last factor, Defendant's only explanation for the untimely production of the 2019 Citation is oversight. (ECF No. 99 at 9–11.) In fact, Defendant, and Defendant's parent company, Arch, had the 2019 Citation in their databases all along. (ECF No. 99-4 at 3–4.) Yet, it was not produced when the other 4,500+ pages were produced in this case. (ECF No. 99 at 10.) Instead, the 2019 Citation was discovered while the human resources manager for Defendant was preparing his testimony for the Rule 30(b)(6) deposition. (ECF No. 99-4 at 3–4.) In preparing for his testimony, he contacted an employee at Arch and asked that she pull "data regarding all MSHA citations and orders to Mingo Logan that were based on an alleged violation of 30 C.F.R. § 75.220(a), which governs roof control plans." (*Id.* at 4.) When she returned a spreadsheet of

14

citations, Defendant's human resources manager found the 2019 Citation by doing a text search within the provided spreadsheet for relevant terms. (*Id.*) Once the 2019 Citation was found in the spreadsheet by Arch, Defendant's human resources manager then located the 2019 Citation in Defendant's own files as well. (*Id.*) Defendant then turned over the 2019 Citation on February 29, 2024—almost eight months after Plaintiffs' initial request. (ECF No. 89-2 at 2.)

The apparent ease with which Defendant located and produced the 2019 Citation indicates that any explanation for Defendant's untimely service of the 2019 Citation is inadequate. *See, e.g.*, *Cochran*, 2014 WL 347426, at *4 (rejecting the plaintiff's explanation that it could not locate a potential witness earlier where "[t]he speed with which [the] plaintiff located [the potential witness] . . . belies prior difficulty in so doing"). *See generally Miller v. United States*, No. 5:09–CV–534–F, 2011 WL 3440753, at *4 (E.D.N.C. Aug. 8, 2011) ("Put simply, Plaintiffs dragged their feet. . . . Information is gleaned during discovery which allows parties to 'change their calculus' with respect to the litigation. Having waited to glean vital information, Plaintiffs cannot transform what is at best a strategic misstep into substantial justification.").

For the aforementioned reasons, the Court finds that Defendant's untimely service of the 2019 Citation was neither substantially justified nor harmless. The Court therefore also finds that Defendant's unjustified delay in producing and serving the 2019 Citation weighs in favor of sanctioning Defendant.

As a sanction, the Court designates certain facts to be taken as established. Those facts are: (1) unbolted "middle rock" constitutes a specific unsafe working condition; (2) Defendant possessed actual knowledge that unbolted "middle rock" constitutes a specific unsafe working condition; and (3) that the failure to bolt "middle rock" violates state and federal safety regulations, specifically 30 C.F.R. § 75.220(a)(1), that are specifically applicable to the work performed by

15

Mr. Morris on January 13, 2021.

### B. *Summary Judgment Motions*

Plaintiffs and Defendant both move for summary judgment. (ECF Nos. 82, 84.) The remaining claims of the Amended Complaint are Deliberate Intent and Loss of Consortium.[4] (ECF No. 1-1 at 5–7, 9.) To succeed on a deliberate intent claim in West Virginia, the Plaintiff must prove:

> (i) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
> (ii) That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition . . . .
> (iii) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer . . . .
> (iv) That notwithstanding the existence of the facts set forth in subparagraphs (i) through (iii), inclusive, of this paragraph, the person or persons alleged to have actual knowledge under subparagraph (ii) nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and
> (v) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three as direct and proximate result of the specific unsafe working condition."

W. Va. Code §§ 23-4-2(d)(2)(B)(i)–(ii), (iii), (iv)–(v).

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If there exist factual issues that properly can be resolved only by a trier of fact because

---

[4] Mrs. Morris filed a claim for loss of consortium. Since Mrs. Morris' claim is derivative to Mr. Morris' claim of deliberate intent, meaning she can only recover if Mr. Morris has a viable claim, the Court will cabin its inquiry to the deliberate intent claim.

16

they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The moving party bears the burden of showing that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 (4th Cir. 1990). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Treating the three facts mentioned above as established, they go to the first three elements of deliberate intent. However, the Court concludes that a reasonable jury could find that not bolting middle rock, or not bolting middle rock in a particular way, did not create a "high degree of risk and a strong probability of serious injury or death." *See* W. Va. Code §§ 23-4-2(d)(2)(B)(i)–(ii). Conversely, a reasonable jury could find the opposite to be true. This uncertainty constitutes a genuine issue of material fact. Therefore, neither party is entitled to judgment as a matter of law, and Defendant's Motion for Summary Judgment, (ECF No. 82), and Plaintiffs' Motion for Summary Judgment, (ECF No. 84), are both **DENIED**.

### III.   CONCLUSION

As a consequence of Defendant's untimely production of the 2019 Citation, the Court designates certain facts as established. Therefore, the Plaintiff's Motion to Strike and Designate Facts as Established is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 89.) Treating those facts as established, the Court concludes that there is a genuine issue of material fact.

Therefore, Defendant's Motion for Summary Judgment, (ECF No. 82), and Plaintiff's Motion for Summary Judgment, (ECF No. 84), are **DENIED**.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 22, 2024

THOMAS E. JOHNSTON, CHIEF JUDGE